**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| LIQUIDNET HOLDINGS INC., | ) | |
| | ) | |
| Plaintiff, Counterclaim | ) | Case No. 07-CIV-6886 (GEL)(HBP) |
| Defendant | ) | |
| | ) | |
| v. | ) | **ECF Case** |
| | ) | |
| PULSE TRADING, INC. | ) | **Filed Electronically** |
| | ) | |
| Defendant, Counterclaim | ) | |
| Plaintiff | ) | |
| | ) | |

**PULSE TRADING, INC.'S NOTICE OF MOTION FOR LEAVE TO**
**AMEND ITS ANSWER AND COUNTERCLAIM**

To:     Gaston Kroub, Esq.
Michael A. Nicodema, Esq.
GREENBERG TRAURIG LLP
200 Park Avenue
New York, NY 10166

PLEASE TAKE NOTICE THAT defendant/counterclaim plaintiff Pulse Trading, Inc.

hereby moves this Court before the Honorable Gerald E. Lynch under Fed. R. Civ. P. 15(a) for

an order granting leave for it to file its Amended Answer and Counterclaim.

Dated:  May 12, 2008

s/  Connie W. Pong_____

KENYON & KENYON LLP
Jerry Canada
Connie W. Pong (CP 3766)
One Broadway
New York, NY 10004
(212) 425-7200 (phone)
(212) 425-5288 (fax)

Of counsel:

CHOATE HALL & STEWART LLP

Eric J. Marandett (Mass Bar No.:  561730)
Kathleen B. Shields (Mass Bar No.: 637438)
Stacy L. Blasberg (Mass Bar No.:  657420)
Devon M. Bush (Mass Bar No.: 664960)

Two International Place
Boston, MA  02110
(617) 248-5000 (phone)
(617) 248-4000 (fax)

Attorneys for Defendant/Counterclaim
Plaintiff Pulse Trading, Inc.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| LIQUIDNET HOLDINGS INC., | ) | |
| | ) | |
| Plaintiff, Counterclaim | ) | Case No. 07-CIV-6886 (GEL)(HBP) |
| Defendant | ) | |
| | ) | **PULSE TRADING INC.'S ASSENTED-TO** |
| v. | ) | **MOTION FOR LEAVE TO AMEND ITS** |
| | ) | **ANSWER AND COUNTERCLAIM** |
| PULSE TRADING, INC. | ) | |
| | ) | **ECF Case** |
| Defendant, Counterclaim | ) | |
| Plaintiff | ) | **Filed Electronically** |
| | ) | |

Defendant and Counterclaim Plaintiff Pulse Trading, Inc. ("PTI") hereby moves, pursuant to Federal Rule of Civil Procedure 15(a), for leave to serve and file the attached Amended Answer and Counterclaim in the above-captioned matter. PTI's request to supplement its pleadings is timely under this Court's Case Management Plan and will not delay the proceedings. Moreover, the interests of justice weigh in favor of permitting this amendment because it addresses facts learned by PTI since it first served its Answer and Counterclaim on August 21, 2007. Counsel for Liquidnet assents to this Motion.

WHEREFORE, PTI respectfully requests that this Court enter an order granting it leave to serve and file the Amended Answer and Counterclaim attached hereto as Exhibit A.

A proposed order is attached hereto.

Respectfully submitted,

Dated: May 12, 2008                KENYON & KENYON LLP

By:    s/ Connie W. Pong_____
Jerry Canada
Connie W. Pong (CP 3766)
One Broadway
New York, NY 10004
(212) 425-7200 (phone)
(212) 425-5288 (fax)

Of counsel:

CHOATE HALL & STEWART LLP

Eric J. Marandett (Mass Bar No.:  561730)
Kathleen B. Shields (Mass Bar No.: 637438)
Stacy L. Blasberg (Mass Bar No.:  657420)
Devon M. Bush (Mass Bar No.: 664960)
Two International Place
Boston, MA  02110
(617) 248-5000 (phone)
(617) 248-4000 (fax)

Attorneys for Defendant Pulse Trading, Inc.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| LIQUIDNET HOLDINGS INC., | ) | |
| | ) | |
| Plaintiff, Counterclaim | ) | Case No. 07-CIV-6886 (GEL)(HBP) |
| Defendant | ) | |
| | ) | |
| v. | ) | **ECF Case** |
| | ) | |
| PULSE TRADING, INC. | ) | |
| | ) | |
| Defendant, Counterclaim | ) | |
| Plaintiff | ) | |

**[PROPOSED] ORDER GRANTING PULSE TRADING, INC.'S ASSENTED-TO
MOTION FOR LEAVE TO AMEND ITS ANSWER AND COUNTERCLAIM**

Defendant and Counterclaim Plaintiff Pulse Trading, Inc's Assented-to Motion for Leave to Amend its Answer and Counterclaim is hereby granted.

Dated: _____          _____
                                                        Gerald E. Lynch
                                              United States District Judge

# EXHIBIT A

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| LIQUIDNET HOLDINGS INC., | ) | |
| | ) | |
| Plaintiff, Counterclaim Defendant | ) | Case No. 07-CIV-6886 (GEL)(HBP) |
| | ) | |
| | ) | **PULSE TRADING INC.'S [PROPOSED]** |
| v. | ) | **AMENDED ANSWER AND** |
| | ) | **COUNTERCLAIM TO COMPLAINT FOR** |
| PULSE TRADING, INC. | ) | **PATENT INFRINGEMENT** |
| | ) | |
| Defendant, Counterclaim Plaintiff | ) | **ECF Case** |
| | ) | |
| | ) | **Filed Electronically** |

Defendant Pulse Trading, Inc. (PTI) hereby responds to the allegations of the Complaint as follows:

1.      PTI denies the allegations of paragraph 1 of the Complaint, except PTI admits that the Complaint recites an action for patent infringement, that a copy of the '834 patent is attached to the complaint, and further states that the '834 patent speaks for itself.

2.      PTI denies the allegations of paragraph 2 of the Complaint, except that the '834 patent speaks for itself.

3.      PTI denies the allegations of paragraph 3 of the Complaint, except that the '834 patent speaks for itself, and further PTI states that PTI is without knowledge or information sufficient to form a belief as to the alleged aspects of the Liquidnet System.

4.      PTI is without knowledge or information sufficient to form a belief as to the truth of the statements in paragraph 4 of the Complaint.

5.      Admitted.

6.    PTI states that paragraph 6 of the Complaint states a legal conclusion as to which no response is required.

7.    PTI states that paragraph 7 of the Complaint states a legal conclusion as to which no response is required.

8.    PTI states that paragraph 8 of the Complaint states a legal conclusion as to which no response is required.

9.    PTI denies the allegations of paragraph 9 of the Complaint, except that PTI states that it markets a software solution commercially known as "BlockCross," that the BlockCross software is designed, among other things, to "scrape" certain information from OMS databases, to use certain of that information in a process which generates and transmits indications, and to update certain of that information periodically.

10.    PTI denies the allegations of paragraph 10, except that PTI states that Exhibit 2 and Exhibit 3 of the Complaint speak for themselves.

11.    Denied.

12.    Denied.

13.    Denied.

14.    Denied.

15.    Denied.

16.    PTI states that paragraph 16 of the Complaint states a legal request as to which no response is required.  PTI requests a jury trial under Fed R. Civ. P. 38 on all issues in the Complaint so triable.

## FIRST AFFIRMATIVE DEFENSE

The '834 patent is invalid for failure to meet the conditions for patentability of 35 U.S.C. §§ 1, et seq.

<u>**SECOND AFFIRMATIVE DEFENSE**</u>

PTI has not infringed nor induced or contributed to the infringement of the '834 patent, either literally or under the doctrine of equivalents.

<u>**THIRD AFFIRMATIVE DEFENSE**</u>

The '834 patent is unenforceable due to inequitable conduct committed during the prosecution of the '834 patent. PTI incorporates herein by reference the allegations of its counterclaims contained below in paragraphs 1 to 38.

<u>**FOURTH AFFIRMATIVE DEFENSE**</u>

Plaintiff's claims are barred by the doctrine of unclean hands.

<u>**FIFTH AFFIRMATIVE DEFENSE**</u>

Plaintiff has failed to state a claim upon which relief can be granted.

<u>**COUNTERCLAIM**</u>

<u>**Introduction**</u>

1.      This is a declaratory judgment action. On July 31, 2007, Liquidnet sued Pulse Trading, Inc. ("PTI") for infringing U.S. Patent No. 7,136,834 (the "'834 patent"). PTI now seeks a declaration that it has neither infringed nor induced or contributed to the infringement of the '834 patent. PTI also seeks a declaration that the '834 patent is invalid for having failed to meet the conditions of patentability of 35 U.S.C. §§ 1, et seq. Finally, PTI seeks a declaration that the '834 patent is unenforceable due to inequitable conduct committed during its prosecution.

2.      The '834 patent relates to the field of electronic securities trading. Many institutional investment firms use electronic order management systems ("OMSs") to store information about their orders to buy or sell securities. Some such firms also subscribe to

electronic trading marketplaces ("ETMs") that allow traders to buy and sell large blocks of securities anonymously in a highly liquid environment.

3.      The '834 patent is invalid and unenforceable because the individuals it names as inventors did not themselves invent the claimed method but instead derived it from the Harborside system, which was invented by Richard Holway and his employer, Jefferies & Co. ("Jefferies").  "Harborside," was on sale and in public use more than one year prior to the filing of the provisional application that became the '834 patent and thus is invalidating prior art.

4.      Liquidnet and the named inventors on the '834 patent knew about the Harborside system and certain of them worked on that system while under contract for Jefferies.  The Harborside system was one of the most material pieces of prior art of which Liquidnet and its inventors were aware.  Nevertheless, Liquidnet and the '834 patent's named inventors intentionally withheld material information concerning Harborside from the PTO during prosecution.  They also intentionally provided inaccurate and deceptive information concerning the system to the PTO, arguing that Harborside came after the Liquidnet system and was an attempt to copy the Liquidnet system.  As a result of these actions, the '834 patent is unenforceable due to inequitable conduct.

### Parties

5.      Counterclaim Plaintiff PTI  is a Massachusetts corporation having its principal place of business at 2 Liberty Square, 2nd Floor, Boston, MA 02109.

6.      Upon information and belief, Counterclaim Defendant Liquidnet Holdings, Inc. ("Liquidnet") is a Delaware Corporation having its principal place of business at 498 7th Avenue, New York, NY 10018.

## Jurisdiction

7.      This Court has jurisdiction over PTI's counterclaim pursuant to 28 U.S.C.

§§1331, 1332(a), 1338 and 2201.  This counterclaim arises under the patent laws of the United

States.  There is an actual controversy between the parties as to the infringement, validity and

enforceability of the '834 patent, as is evidenced by the Complaint in this case and the Answer

that is set forth above.

## Factual Background

**A.      The Harborside System**

8.      Sometime before September 15, 1997, Richard Holway conceived of the

Harborside system.  As conceived, the system provided a method by which institutional trading

firms could send anonymous, non-binding indications to buy and sell securities to an ETM to be

matched with contra indications.  Those indications were derived from order information taken

from the trading firm's OMS.  The Harborside system, as contemplated, would integrate directly

with the trading firm's OMS.

9.      In or around September 1997, Holway approached Jefferies, an investment bank,

to seek a partner for developing the Harborside system.  For several months, Holway shared

documents describing the Harborside system with Jefferies.  Those documents detailed, *inter*

*alia*, how the Harborside system would be integrated with a trading firm's OMS and how non-

binding indications of interest derived from order information in the OMS would be sent to an

ETM.  Holway also informed Jefferies that he had spoken to principals at Merrin Financial who

indicated that they were committed to integrating the Harborside system with Merrin Financial's

OMS.

10.     In June 1998, Mr. Holway started his employment at Jefferies and worked, with

other Jefferies employees, on the Harborside system.  Around this time, at Holway's suggestion,

Jefferies engaged in discussions with a third party software consultant, VIE Technologies, Inc. ("VIE"), about writing software to integrate Harborside into various firms' OMSs. Many of these discussions involved the President and co-founder of VIE, Eric LeGoff. LeGoff later co-founded Liquidnet and became Liquidnet's Chief Operating Officer.

11.    Another of VIE's founders was Seth Merrin. Prior to establishing VIE, Merrin founded Merrin Financial in 1985 and helped develop Merrin Financial's OMS. Merrin later co-founded Liquidnet and became Liquidnet's CEO. Merrin is one of the named inventors on the '834 patent.

12.    On June 19, 1998, LeGoff sent Jefferies a formal proposal that specified the integration work that VIE proposed to do. In part, the proposal stated:

> Copernicus [VIE's proprietary software] will be used to capture specific securities order information from a variety of order management systems (OMS) and then reformat such information and route the information to Jefferies' Harborside blotter.

13.    On June 30, 1998, VIE and Jefferies entered into a Mutual Non-Disclosure Agreement (the "NDA"). The NDA permitted Jefferies to share "Proprietary Information" with VIE concerning the designs and strategy for the Harborside system. The NDA provided that such Proprietary Information "shall be used solely in connection with the . . . [u]se of Copernicus® to integrate various order management systems with Jefferies' Harborside system." The NDA also stated clearly that Jefferies was retaining all rights to its Harborside system, including the intellectual property associated with that system.

14.    Shortly after entering this NDA, VIE began work to integrate the Harborside system with the Merrin OMS. On or around July 17, 1998, a successful alpha test of the integrated system was run in which order information was extracted from the Merrin OMS and sent as indications of interest to Harborside. Kevin Lupowitz, who was a VIE employee at the

time, worked on this alpha test.  Lupowitz later became one of the founding employees of

Liquidnet, worked as Liquidnet's Chief Technology Officer, and is a listed inventor on the '834

patent.

15.     On or around July 27, 1998, Lupowitz assisted in drafting an Installation Guide

for the integration of the Harborside system with the Merrin OMS.  He circulated a draft of this

installation guide to a number of individuals, including LeGoff.  The installation guide described

VIE's work on the system as follows:

> VIE Systems has been contracted by Jefferies to develop a
> purpose-built implementation of Copernicus which will _extract_
> _trade data from the Merrin Financial Trading Platform_, _convert_
> _the appropriate data to indications of interest, and_ _transmit_ _these_
> _indications to Harborside_ via a secure HTTP streaming
> executable.  (Emphasis added.)

16.     VIE reported that the integration was successfully completed in August 1998.

Jefferies continued to contract with VIE to work on the Harborside system through at least

October, 1998.  Lupowitz remained involved in the work that VIE was conducting.

17.     Merrin and LeGoff sold VIE in or about April 1999.  In November 1999, Merrin

and LeGoff founded Liquidnet.  Merrin acted as Liquidnet's CEO.  LeGoff served as its Chief

Operating Officer.

18.     On May 25, 1999, Jefferies launched the Harborside system.

19.     On May 11 and 14, 1999, respectively, Holway and one of his co-workers at

Jefferies, John C. Shaw, filed two provisional patent applications, Nos. 60/133,655 and

60/134,207, directed to aspects of the Harborside system.  A non-provisional patent application,

No. 09/569,135, was filed on May 11, 2000.  Continuation-in-part applications, Nos. 09/570,562

and 10/032,535, were filed on May 12, 2000 and January 2, 2002, respectively.  Application No.

10/032,535 (the "Harborside Application") was published on January 2, 2003.

20.     The Harborside Application describes key aspects of the Harborside system including its integration with a trading firm's OMS and the provision of non-binding indications to an ETM:

> The respective indications of interest of each party can be entered into the database 1 of the information management system in a variety of ways. . . .  To make the system as easy as possible to use, the indication requirements of the system may be directly integrated with one or more of any of the available buy side order management systems (OMS) including the MacGregor Group's Preditor System, the Landmark's Longview System, and the Merrin Financial Group's Windows and Order Management Systems.  The party can highlight indications of interest by pointing and clicking on the OMS's blotter and creating an export file to send and upload orders directly to the information management system of the present invention via the Financial Information Exchange (F.I.X.) protocol.

**B.      Liquidnet's Prosecution of the '834 Patent**

21.     Upon information and belief, Liquidnet is the assignee of the '834 patent.  The named inventors on the '834 patent are Seth I. Merrin, John Halloran, Demian Kosofsky, and Kevin Lupowitz.

22.     On October 19, 2000, Merrin and certain other of the inventors listed on the '834 patent filed a provisional patent application which was directed to a system virtually identical to the Harborside system.  Specifically, the provisional application was directed to a system that integrated with an OMS, gathered order information from that OMS and converted the order information into non-binding indications to be sent to an ETM.  The provisional application was entitled "Electronic Securities Marketplace Having Integration With Order Management Systems."

23.     On April 12, 2001, Liquidnet filed its non-provisional application, (the "Liquidnet Application").  Claim 1 of the originally filed application read:

1.    A system for performing electronic securities trading, comprising:
    an electronic trading marketplace (ETM) for receiving information indicating orders for securities and for facilitating the trading of the securities; and
    an interfacing module interfacing with an order management system (OMS) database and in communication with the ETM for reading data records in the OMS database reflecting orders for securities and for automatically providing information indicating the orders for securities to the ETM.

24.    The PTO issued a series of rejections to the Liquidnet Application based on various prior art references.  Through the middle of 2004, Liquidnet tried several times to get around those rejections but was unsuccessful in doing so.

25.    On August 10, 2004, the PTO issued an Office Action rejecting all pending claims in the Liquidnet Application as obvious pursuant to 35 U.S.C. § 103.  On December 10, 2004, Liquidnet filed an Amendment responding to that Office Action.  Liquidnet also submitted a series of declarations designed to try to establish that its claimed invention was not obvious.  Many of these declarations alleged secondary indications of non-obviousness, such as the purported commercial success of the Liquidnet system and the copying of that system by others.  For the first time, Liquidnet mentioned the Harborside system to the PTO.  However, instead of disclosing that system as prior art, Liquidnet referred solely to a later version of the Harborside system named Harborside+, and fraudulently deceived the PTO into believing that the Harborside system was developed after Liquidnet's purported invention and that the Harborside system intentionally copied Liquidnet..

26.    Specifically, through the declarations of Richard H. Repetto, a Senior Equities Analyst at Sandler O'Neill, John Coulter, a Vice President and Director of Marketing & Business Development with VhaYu Technologies, Inc., and Robert M. Hegarty, the Vice President of

Securities & Investments Research at TowerGroup, Liquidnet falsely asserted that the Harborside system copied claimed features associated with the Liquidnet system. All of the declarations used identical language:

> I am familiar with the trading system offered by Harborside+ and believe that the success of the Liquidnet system caused Harborside+, a competitor of Liquidnet, to copy the Liquidnet system and, more particularly, to copy the claimed features of reading records reflecting orders in OMS databases and deriving non-binding indications of interest, which are provided to a marketplace. This copying is evidenced by a comparison of two articles: Exhibit 5, "New Block Trading System Combines Automation with the Human Touch, Wall Street and Technology, September 4, 2002, and Exhibit 6, "Buy-Side Firms Tapping Liquidity Via OMS Interfaces with Harborside+," December 16, 2002 Harborside+ press release.

> \*       \*       \*

> I believe that Liquidnet's success stemming from the ease of use and increased liquidity resulting from integration with traders' OMSs likely caused Harborside+ to copy these features. I also believe that Harborside+ likely copied the Liquidnet system because Liquidnet was a well-known competitor to Harborside+ in providing a market for large block trades.

27.     John Halloran, a Liquidnet employee and one of the inventors on the '834 patent, found the articles cited in these declarations and circulated them to other Liquidnet employees, including LeGoff, to discuss their use in supporting Liquidnet's patent claims.

28.     LeGoff also submitted a declaration in connection with the December 10, 2004 Amendment. Interestingly, his declaration was the only one submitted on that date that did not mention the Harborside system. Nevertheless, LeGoff was aware of Liquidnet's arguments involving the Harborside system, helped construct those arguments, and purposely withheld material information from the PTO that would have revealed the serious inaccuracies and mistruths behind Liquidnet's assertions.

29.     In the December 10, 2004 Amendment, Liquidnet continued its

misrepresentations to the PTO by arguing, based on the declarations, that the Harborside system

copied Liquidnet's invention:

> Harborside+, a competitor of Liquidnet, copied the Liquidnet
> system and, more particularly, copied the claimed features of
> reading records reflecting orders in OMS databases and deriving
> non-binding indications of interest, which are automatically
> provided to a marketplace.  This copying is evidenced by a
> comparison of two articles:  Exhibit 5 to the Third Party
> Declarations, "New Block Trading System Combines Automation
> with the Human Touch, Wall Street and Technology, September 4,
> 2002, and Exhibit 6 to the Third Party Declarations, "Buy-Side
> Firms Tapping Liquidity Via OMS Interfaces with Harborside+,"
> December 16, 2002 Harborside+ press release. . . .  In sum,
> Harborside+ copied the claimed features from Liquidnet.

30.     Liquidnet also argued that one of the key points of novelty for its invention was

the conversion of binding orders in a trading firm's OMS to non-binding indications that are sent

to an ETM.  For example, in the December 10, 2004 Amendment, Liquidnet stated:  "Each of the

independent claims recite that the non-binding indications <u>are derived from</u> the records reflecting

orders in the order management system database.  Thus, the claims reflect a conversion from

firm orders to non-binding indications; from the proverbial 'apples' to 'oranges.'"  (emphasis in

original).  Liquidnet and Merrin, LeGoff, and Lupowitz knew that the very point of purported

novelty they were highlighting was a key feature of the prior art Harborside system.  Indeed, in

the July 27, 1998 draft of the Installation Guide for the integration of the Merrin OMS with the

Harborside system that Mr. Lupowitz helped write while employed at VIE, and that he circulated

to LeGoff at the time, this very feature of converting OMS order information into non-binding

indications was specifically referenced:

> VIE Systems has been contracted by Jefferies to develop a
> purpose-built implementation of Copernicus which will *<u>extract</u>*
> *trade data from the Merrin Financial Trading Platform, **<u>convert</u>***
> *the appropriate data to indications of interest, and <u>transmit</u> these*

-11-

> *indications to Harborside* via a secure HTTP streaming
> executable. (emphasis added)

31. Nevertheless, without disclosing these key and material facts concerning the prior art Harborside system, Liquidnet continued to argue to the PTO through June 2006 that one of the key features of novelty of its invention was the conversion of firm orders into non-binding indications. Liquidnet went so far as to tell the PTO, in a May 25, 2005 Amendment, that "Applicants know of no prior system or method, manual or automated, for reading OMS records reflecting orders, deriving non-binding indications and providing such non-binding indications to a separate marketplace . . . ."

32. On July 12, 2006, Liquidnet amended its claims to the form in which they appear in the '834 patent. The PTO issued a Notice of Allowance on September 8, 2006, and the '834 patent issued on November 14, 2006. Still, neither Liquidnet nor any of its inventors ever disclosed the true facts concerning the Harborside system to the PTO.

33. As issued, the claims of the '834 patent cover a method of obtaining information from an OMS and then sending that information in a particular form to an ETM. Claim 1 of the '834 patent reads:

> 1.    a computer-implemented method for generating non-binding indications for at least one security comprising:
> i)    accessing, by at least one computer, all records of open orders from a database of an order management system, wherein the order management system database is associated with a trading firm and wherein the order management system is coupled to at least one workstation utilized by the trading firm and wherein the order management system database comprises at least the following fields:
> (a)    security name, symbol or identifier,
> (b)    transaction type,
> (c)    total order size,
> (d)    quantity of the security placed elsewhere, and
> (e)    quantity of the security executed;

(ii)    generating, by at least one computer, all non-binding indications from the accessed records of orders that are suitable for transmission to at least one electronic marketplace, each non-binding indication comprising security name, symbol or identifier, the transaction type, and an available quantity, such available quantity being determined by the accessed records;

(iii)   sending the suitable non-binding indications to the at least one electronic marketplace;

(iv)    periodically determining if at least one accessed record of order of the order management system database has changed and, if such accessed record of the order management system database has changed, then subsequently generating, for the changed record of order, at least one updated non-binding indication; and

(v)     if updated, subsequently sending the updated non-binding indication to the at least one electronic marketplace.

## C.    Liquidnet's Misconduct

34.    The Harborside system is prior art to the '834 patent.  It was on sale and in public use for more than a year before Liquidnet filed its provisional patent application.  The claims of the '834 patent are invalid over the Harborside system.  Liquidnet failed to disclose this highly material prior art to the PTO.

35.    All inventors on a patent application and all persons substantively involved in the prosecution of a patent application owe a duty of candor and good faith to the PTO.  Merrin and Lupowitz are inventors on the Liquidnet Application, and LeGoff was substantively involved in the prosecution of that Application.  On information and belief, through his prior ties to Merrin Financial, his work at VIE, and his  relationship with LeGoff and Lupowitz, Merrin was intimately familiar with the Harborside system prior to and during the prosecution of the Liquidnet Application.  Lupowitz and LeGoff also were intimately familiar with the Harborside system prior to and during the prosecution of the Liquidnet Application.

36.     Upon information and belief, Merrin and Lupowitz, as well as the other named inventors, derived the invention claimed in the '834 patent from the Harborside system.  Merrin, Lupowitz, and LeGoff all knew that the Harborside system was as material, and perhaps even more material, to the patentability of the Liquidnet Application than any piece of prior art they had disclosed to the PTO.  Yet, none of them ever disclosed the Harborside system to the PTO as prior art, nor did any of them disclose the fact that they had derived the idea for the '834 patent from the Harborside system.

37.     Liquidnet, and at least Merrin, Lupowitz, and LeGoff, acted willfully and intentionally in withholding key information from the PTO regarding the Harborside system, including but not limited to the fact that (a) the Harborside system was on sale and in public use in this country over one year prior to the date of Liquidnet's provisional application, (b) the key features of the '834 patent which Liquidnet claimed established its novelty over the prior art were present in the Harborside system, and (c) Merrin and Lupowitz, at a minimum, derived the idea of the invention claimed in the '834 patent from the Harborside system.  All of this information was material to the patentability of the '834 patent.  Furthermore, Liquidnet, and at least Merrin, Lupowitz, and LeGoff, acted willfully and intentionally by misrepresenting to the PTO that Harborside copied its system from Liquidnet instead of the other way around.  This misrepresentation was material to the patentability of the '834 patent.

38.     The failure by Liquidnet, Merrin, Lupowitz and LeGoff to act candidly and in good faith with the PTO constitutes inequitable conduct.

## COUNT I:  NON-INFRINGEMENT

39.     PTI repeats and incorporates by reference herein the allegations contained in paragraphs 1-38 of its Counterclaim.

-14-

40.    PTI has neither infringed nor induced or contributed to the infringement of the '834 patent.

## COUNT II:  INVALIDITY

41.    PTI repeats and incorporates by reference herein the allegations contained in paragraphs 1-40 of its Counterclaim.

42.    The '834 patent is invalid for failure to meet the conditions for patentability of 35 U.S.C. §§ 1, et seq.

## COUNT III:  UNENFORCEABILITY / INEQUITABLE CONDUCT

43.    PTI repeats and incorporates by reference herein the allegations contained in paragraphs 1-42 of its Counterclaim.

44.    The '834 patent is unenforceable due to inequitable conduct committed during the prosecution of the patent in the PTO.

## DEMAND FOR JURY TRIAL

45.    PTI requests a jury trial under Fed R. Civ. P. 38 on all issues in this counterclaim so triable.

## PRAYER FOR RELIEF

46.    That the Court:

(a)    declare that PTI has not infringed, and does not infringe, the claims of United States Patent No. 7,136,834 B1;

(b)    declare that the '834 patent is invalid for failure to meet the conditions for patentability of 35 U.S.C. §§ 1, et seq.;

(c)    declare that the '834 patent is unenforceable due to inequitable conduct committed during the prosecution of the patent in the PTO;

-15-

(d)      declare that this is an exceptional case pursuant to 35 U.S.C. § 285;

(e)      award PTI its reasonable attorneys' fees and costs incurred in connection

with this action;

(f)      dismiss the Complaint with prejudice; and

(g)      grant to PTI such other and further relief as it deems just in the

circumstances.

Dated: May 12, 2008                    KENYON & KENYON LLP


By:  _____
     Jerry Canada
     Connie W. Pong (CP 3766)
     One Broadway
     New York, NY  10004
     (212) 425-7200 (phone)
     (212) 425-5288 (fax)


Of counsel:

CHOATE HALL & STEWART LLP



_____
Eric J. Marandett (Mass Bar No.:  561730)
Kathleen Burdette Shields (Mass Bar No.: 637438)
Stacy L. Blasberg (Mass Bar No.: 657420)
Devon M. Bush (Mass Bar No.: 664960)
Two International Place
Boston, MA  02110
(617) 248-5000 (phone)
(617) 248-4000 (fax)

Attorneys for Defendant Pulse Trading, Inc.

4314748v2